**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **THE OHIO BELL TEL. CO., INC.** : | |
| : | |
| **Plaintiff,** : | |
| : | **Case No. 06-CV-549** |
| **v.** : | **JUDGE ALGENON L. MARBLEY** |
| : | **Magistrate Judge Kemp** |
| **GLOBAL NAPS OHIO, INC.,** *et al.* : | |
| : | |
| **Defendants.** : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

Plaintiff, The Ohio Bell Telephone Company, Inc. ("Ohio Bell"), filed a nine-count amended complaint against Defendants Global NAPs Ohio, Inc., Global NAPs, Inc., Global NAPs New Hampshire, Inc., Global NAPs Networks, Inc., Global NAPs Realty, Inc., and Ferrous Miner Holding, Ltd. (collectively, "Global"). Ohio Bell alleges that since at least February 2004, it has provided Global with certain telecommunications services and facilities, but that Global has refused to pay. The amended complaint therefore alleges violations of Ohio Bell's federal tariffs (counts I-III) and state tariffs (counts IV-V), breach of the parties' interconnection agreement ("ICA") (counts VI-VIII), and a claim for quantum meruit (count IX). Global has moved to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction. Global argues that because Ohio Bell did not first submit its breach-of-ICA claims to the Ohio Public Utility Commission ("PUCO"), this Court lacks jurisdiction to hear them. Global asserts this same jurisdictional defect as to Ohio Bell's federal-tariff claims, arguing that these are actually

disguised breach-of-ICA claims. In the absence of a federal question properly before this Court, Global requests that the Court dismiss the action entirely.

For the reasons described below, the Court construes Global's motion as one brought under Rule 12(c) and **GRANTS** it as to Ohio Bell's breach-of-ICA claims, but **DENIES** the motion in all other respects. Ohio Bell may continue to litigate its federal- and state-tariff claims and its common law claim in this Court.

## II. BACKGROUND

### A. The Telecommunications Act of 1996

The purpose of the Telecommunications Act of 1996, 47 U.S.C. §§ 251 *et seq.*, is to promote competition in the telecommunications industry. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 638 (2002). Because entry into this market is often prohibitively expensive, the Act requires incumbent local exchange carriers ("ILECs"), such as Ohio Bell, to provide competing local exchange carriers ("CLECs") with access to their networks. 47 U.S.C. § 251(c)(2). According to the amended complaint, "[i]nterconnection between different carriers' networks allows the end-users of one carrier to make calls to and receive calls from the end-users of the interconnected carrier."

If a CLEC requests access to an ILEC's networks, the Act instructs the parties to enter into negotiations to establish an interconnection agreement (the aforementioned "ICA"). An ICA sets forth the terms, conditions, and pricing arrangements by which the communications traffic of the CLEC's customers will be transported over the ILEC's networks. 47 U.S.C. §§ 251(c)(2) & 252. Parties may establish an ICA through voluntary negotiation, mediation, or compulsory arbitration conducted by a state commission, such as PUCO. *See id.* at §§ 252(a) &

(b). Once the parties have reached an agreement, the resulting ICA must be submitted to the state commission for approval. *See id.* at § 252(e). Generally speaking, a state commission may reject an ICA only if it finds that the agreement: (1) discriminates against a non-party telecommunications carrier; (2) is inconsistent with the public interest, convenience, and necessity; or (3) does not meet the requirements of § 251 or the regulations promulgated thereunder. *See id.* at § 252(e)(2). Finally, "any party aggrieved by [a state commission] determination may bring an action in an appropriate [f]ederal district court to determine whether the agreement . . . meets the requirements of" §§ 251 and 252. *Id.* at § 252(e)(6).

## B. Procedural History

Pursuant to §§ 251 and 252 of the Telecommunications Act, Ohio Bell and Global entered into negotiations to establish an ICA. They ultimately arbitrated certain unresolved issues before the PUCO and the PUCO subsequently approved the final agreement, which took effect in September 2002.

On June 30, 2006, Ohio Bell filed this lawsuit, alleging that Global has failed to pay for services—essentially the transportation and termination of various types of communications—rendered under the parties' ICA and Ohio Bell's state and federal tariffs. On December 19, 2006, Ohio Bell filed an amended complaint alleging the same claims, but adding affiliates of Global as defendants. Global answered the amended complaint on December 29, 2006, and now moves to dismiss Ohio Bell's claims for lack of subject matter jurisdiction.[1]

---

[1] Global NAPs Ohio, the lead defendant, answered on December 29, 2006. The other defendants answered on later dates.

### III.  STANDARD OF REVIEW

Federal courts are courts of limited subject matter jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Federal Rule of Civil Procedure 12(h)(3) instructs that "[w]henever it appears by the suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.  The party that invokes federal jurisdiction has the burden of establishing its existence.  *Moir v. Greater Cleveland Reg. Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).  A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may attack the complaint on its face or may go beyond the complaint and challenge the factual existence of subject matter jurisdiction.  *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005).

### IV.  ANALYSIS

#### A.  Ohio Bell's Breach-of-ICA Claims

The central question presented by Global's motion is this: Must Ohio Bell first litigate its breach-of-ICA claims before PUCO in order to seek review in this Court?  The answer to this question depends on two things, including (1) whether the Telecommunications Act embodies an exhaustion-of-remedies requirement, and (2) if so, whether that requirement is a jurisdictional prerequisite to suit, or whether it is an affirmative defense that may be forfeited if not timely raised.  Global points to the text of the Telecommunications Act as well as applicable case authority to support its position that Ohio Bell is required to seek a resolution from PUCO first, and that its failure to do so deprives this Court of jurisdiction.  Ohio Bell disagrees, arguing that because the Court has subject matter jurisdiction over the federal-tariff claims, it may exercise supplemental jurisdiction over Ohio Bell's breach-of-ICA claims.  In the alternative, Ohio Bell

contends that even if the Act contains an exhaustion-of-remedies requirement, this requirement is not jurisdictional in nature, but is instead an affirmative defense that Global has waived.

### 1. Does the Act Require Administrative Exhaustion?

The exhaustion doctrine "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). Where Congress has delegated certain responsibilities to an administrative agency, courts are obligated to refrain from stepping in until the agency has acted, especially "when the action under review involves exercise of the agency's discretionary power or . . . app[lication] [of] its special expertise." *Id.* Deference to the agency's judgment, at least in the first instance, also conserves resources by possibly mooting the need for judicial intervention and, if not, by developing "a useful record for subsequent judicial consideration, especially in a complex or technical factual context." *Id.*

Congressional intent is the touchstone of the inquiry into whether a statute prescribes exhaustion of administrative remedies prior to filing suit. *Id.* at 144. "Where Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." *Id.*; *Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) (stating that whether the plaintiffs were required to exhaust their administrative remedies was a matter of judicial discretion because "no statute or administrative rule" required exhaustion).

Here, Global relies on § 252(e)(6) of the Act to support its argument that the Court lacks jurisdiction over Ohio Bell's breach-of-ICA claims. That section provides, in relevant part:

> In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may

5

> bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 and this section.

On its face, § 252(e)(6) does not "specifically mandate[]" exhaustion. *McCarthy*, 503 U.S. at 144. Whether to construe the Act as prescribing an exhaustion requirement is therefore a matter for the Court's discretionary judgment. In this regard, the Court begins by analyzing the statutory text. As Global points out, § 252(e)(6) authorizes federal court actions challenging "determination[s]" of state commissions brought by "aggrieved" parties. Global contends that this language shows that Congress intended federal court interpretation and enforcement of ICAs to be restricted to appellate review of state commission decisions. Because there has been no PUCO "determination" here with respect to Ohio Bell's breach-of-ICA claims, and no "party aggrieved" by the non-existent "determination," Global says that this Court is powerless to hear the dispute.

Global's construction of § 252(e)(6) is not without persuasive force, and its argument finds support in applicable case law. In *Core Communications, Inc. v. Verizon Pennsylvania, Inc.*, 493 F.3d 333 (3d Cir. 2007), the Third Circuit held that claims predicated on alleged violations of an ICA must first be adjudicated by the relevant state commission before review in the federal courts may be sought. The court premised its ruling on the Federal Communications Commission's ("FCC") decision, *In the Matter of Starpower Communications*, 15 F.C.C.R. 11277 (2000), and on the overall thrust of the Telecommunications Act.

The Third Circuit began by discussing *Starpower*, in which the FCC held that state commissions have "responsibility" under § 252(e)(5) not just for superintending the formation of ICAs, but also for interpreting and enforcing them. *Starpower*, 15 F.C.C.R. at 11279. The

6

agency reasoned that the extension of the state commissions' authority to post-formation disputes makes sense because "due to its role in the approval process, a state commission is well-suited to address disputes arising from interconnection agreements." *Id.* at 11280.

The Third Circuit acknowledged that *Starpower* did not reach the question of whether state commissions have exclusive jurisdiction in the first instance over disputes arising from existing ICAs. *Core*, 493 F.3d at 341-42. Nonetheless, the court read *Starpower* as supportive of this view because "the FCC's language—calling interpretation and enforcement disputes part of the states' 'responsibility' under § 252—suggests that there is not a shared role for the federal courts in the first instance." *Id.* at 342. Further, the Third Circuit believed that the FCC had "concluded that such a delegation of responsibility best fit the statutory scheme created by Congress." *Id.*

The *Core* court further held that construing the Telecommunications Act "as a symmetrical and coherent regulatory scheme," requires according state commissions the initial opportunity to resolve breach-of-ICA claims because to do otherwise would undermine the role Congress intended state commissions to play in the regulatory scheme. *Id.* at 343 (quoting *Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). Borrowing from the reasoning of a sister circuit, the *Core* court explained:

> [A] state commission's authority to approve or reject an interconnection agreement would itself be undermined if it lacked authority to determine in the first instance the meaning of an agreement that it has approved. A court might ascribe to the agreement a meaning that differs from what the state commission believed it was approving—indeed, the agreement as interpreted by the court may be one the state commission would never have approved in the first place. To deprive the state commission of authority to interpret the agreement that it has approved would thus subvert the role that Congress prescribed for state commissions.

7

*Core*, 493 F.3d at 343 (quoting *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., Inc.*, 317 F.3d 1270, 1278 n.9 (11th Cir. 2003)); *see also Ill. Bell Tel. Co., Inc. v. Global NAPS Ill., Inc.*, No. 06-3431, 2007 WL 4531790 (N.D. Ill. Dec. 17, 2007) (dismissing claims arising from previously approved ICA because the plaintiff failed to first seek enforcement through the state commission); *Contact Commc'ns v. Qwest Corp.*, 246 F. Supp. 2d 1184, 1189 (D. Wyo. 2003) (stating that "[i]t is clear to this Court that absent a prior determination of the issue by the state PSC, no federal court jurisdiction exists" and collecting cases); *AT&T Commc'ns of Ohio, Inc. v. Ohio Bell Tel. Co.*, 29 F. Supp. 2d 855, 856 (S.D. Ohio 1998) ("The statutory scheme does not permit this Court to review disputes arising out of interconnection agreements not previously subject to action by a state commission.").

      The Court finds the Third Circuit's reasoning convincing. In enacting the Telecommunications Act, Congress saw fit to endow state public-utility commissions with significant authority for resolving disputes that arise between carriers while negotiating ICAs and for ultimately approving or rejecting those ICAs. *See* 47 U.S.C. §§ 252(a), (b), & (e); *Global NAPs, Inc. v. Mass. Dep't of Telecomm. and Energy*, 427 F.3d 34, 46 (1st Cir. 2005) ("Congress enlisted the aid of state public utility companies to ensure that local competition was implemented fairly and with due regard to the local conditions and the particular historical circumstances of the local regulation under the prior regime."). The interpretation of the Act as a whole, and of § 252(e)(6), that is most consistent with Congress's broad grant of responsibility to state commissions is one which requires litigants like Ohio Bell to first raise their breach-of-ICA claims before the state commissions. Recognizing this exhaustion requirement will also serve the dual objectives of the doctrine. The decisionmaker that has the greatest experience and

8

expertise with the contested issues—the state commission—will get the first opportunity to resolve them. The federal courts will be called on only when a party dissatisfied with the state commission's ruling seeks judicial review. This in turn will promote efficiency by limiting the number of cases the federal courts are petitioned to resolve, and will also promote better judicial decisionmaking by supplying federal judges with a factual record and the considered opinion of an expert agency. For these reasons, the Court holds that Ohio Bell was obligated to exhaust its administrative remedies by first litigating its breach-of-ICA claims before PUCO.

This does not put an end to matters, however. There remains the question of whether the administrative-exhaustion requirement is a jurisdictional bar to suit or whether it is an affirmative defense that may be forfeited if not timely raised. It is to this subject that the Court now turns.

    2. Is the Exhaustion Requirement Jurisdictional in Nature or an Affirmative Defense?

Global insists that the Act's exhaustion requirement is jurisdictional in nature, and it cites a plethora of district court opinions dismissing for lack of jurisdiction breach-of-ICA claims that were not previously litigated before the state commission. *See e.g., Contact Commc'ns*, 246 F. Supp. 2d at 1188 (concluding that § 252(e)(6) "strips federal district courts of jurisdiction" with respect to "claims that have not been presented to a" state commission); *Atl. Alliance Telecomms., Inc. v. Bell Atl.*, No. 99-CV-4915, 2000 WL 34216867, *3 (E.D.N.Y. Apr. 19, 2000) ("[C]ourts have held that disputes over the interpretation of terms in agreements that have already been approved must first be presented to state commissions before a federal court has jurisdiction."); *Bell Atl.-Va., Inc. v. WorldCom Techs. of Va., Inc.*, 70 F. Supp. 2d 620, 626 (E.D. Va. 1999) ("[T]he Court holds that it lacks subject matter jurisdiction over this dispute *until* the

9

Virginia Commission makes an initial determination."). These authorities are of little help, however, because they contain no reasoning as to why the courts deemed § 252(e)(6)'s exhaustion requirement a jurisdictional bar, rather than an affirmative defense.

It is well established that not all exhaustion requirements are jurisdictional requirements. Some are instead affirmative defenses subject to waiver, tolling, and estoppel. *See e.g. Knight v. Int'l Longshoremen's Ass'n*, 457 F.3d 331, 344 (3d Cir. 2006) ("Failure to exhaust administrative remedies is generally an affirmative defense subject to waiver.") (internal citation omitted); *Mosely v. Bd. of Educ.*, 434 F.3d 527, 533 (7th Cir. 2006) ("A failure to exhaust is normally considered to be an affirmative defense."). Even though courts regularly confuse the two doctrines, *see e.g., Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006) (noting that the Second Circuit has sometimes described an ERISA [Employee Retirement Income Security Act] provision as "jurisdictional" and at other times has suggested that it is an affirmative defense), the distinction is crucial because "lack of exhaustion usually is waivable, as lack of jurisdiction is not." *Mosely*, 434 F.3d at 533. Indeed, the Supreme Court recently cautioned the lower federal courts to take greater care in distinguishing between "claim-processing rules" and jurisdictional bars to suit. In *Eberhart v. United States*, 546 U.S. 12, 16 (2005), the Court stated: "Clarity would be facilitated . . . if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." (internal quotation marks and citation omitted).

Determining in which category ("claim-processing rule" or jurisdictional bar) § 252(e)(6)'s exhaustion rule belongs requires resort to the statutory text. As has already been shown, § 252(e)(6) by its plain terms does not mandate exhaustion. Although the text of the Act generally, and of § 252(e)(6) in particular, can be read (properly in this Court's view) to embody an exhaustion requirement, Congress in no way expressly said as much. Even if exhaustion requirements may be judicially engrafted onto statutes based on what can be inferred from their text and purpose and Congress's intent, courts require the language of the statutes in question to speak with much greater clarity than does § 252(e)(6), for the exhaustion requirement to take on jurisdictional significance. *See e.g., Richardson*, 347 F.3d 431, 434 (2d Cir. 2003) (stating, in the context of the Prison Litigation Reform Act, that "[n]umerous circuits have pointed out that [the PLRA] lacks the sweeping and direct language that would indicate a jurisdictional bar rather than a mere codification of administrative exhaustion requirements") (internal quotation marks omitted).

In holding that the Telecommunications Act's exhaustion requirement is not jurisdictional in nature, this Court follows the precedent of recent decisions from the Fifth Circuit and the District of Connecticut.

In *Premiere Network Services. v. SBC Communications, Inc.*, 440 F.3d 683 (5th Cir. 2006), the Fifth Circuit affirmed the district court's dismissal of the plaintiff's Telecommunications Act claims on the grounds that where the plaintiff had already sought relief before the FCC, federal court review was precluded by the Act's election-of-remedies provision in § 207. The central holding of *Premiere* is thus remote from any of the dispositive issues in this case. What is instructive about *Premiere*, however, is the Fifth Circuit's observation that

11

because the district court dismissed the plaintiff's claims for failure to exhaust administrative remedies under § 252(e)(6), it should have couched its dismissal order in terms of failure to state a claim, not failure of jurisdiction. The Fifth Circuit reasoned:

> 'Whenever the Congress statutorily mandates that a claimant exhaust administrative remedies, the exhaustion requirement is jurisdictional . . . .' *Taylor v. United States Treasury Dep't*, 127 F.3d 470, 475 (5th Cir. 1997). But where a statute does not textually require exhaustion, only the jurisprudential doctrine of exhaustion controls, which is not jurisdictional in nature. Section 252(e)(6) does not expressly require exhaustion of administrative remedies, thus only the jurisprudential doctrine of exhaustion is applicable.

*Id.* at 687 n.5.

Similarly, in *The Southern New England Tel. Co. v. Global NAPs, Inc.*, No. 04-2075, slip op. (D. Conn. Oct. 19, 2007) ("*SNET*"),[2] the court assumed without deciding, that the Telecommunications Act contains an administrative-exhaustion requirement, but it concluded that the requirement was in the mold of an affirmative defense, not a jurisdictional bar. The *SNET* court noted that "there is no language in the Telecommunications Act that expressly

---

[2] Following the completion of briefing on Global's motion to dismiss, the parties filed notices of supplemental authority as additional pertinent decisions were issued by other federal courts. In response to a supplemental-authority filing by Ohio Bell, alerting this Court to the *SNET* opinion, Global filed an opposition memorandum in which it attempted to distinguish and marginalize *SNET*. Ohio Bell moved to strike Global's opposition on the grounds that Global violated Local Rule 7.2(a)(2) by failing to seek leave of Court before filing additional legal arguments. Global's unauthorized filing did constitute a violation of the Local Rule. Notwithstanding this fact, the Court **DENIES** Ohio Bell's motion to strike because the additional legal arguments were helpful to the Court in resolving the complex issues raised by Global's motion and because Ohio Bell was not in any way prejudiced by Global's filing: Ohio Bell took Global's opposition as an opportunity to convince the Court of *SNET's* merits by filing its own substantive brief.

proscribes a district court from hearing a dispute concerning an ICA." *Id.* at 4. In addition, the court noted that in *Core*, the Third Circuit expressed no view on whether the exhaustion requirement is jurisdictional or an affirmative defense. That being said, the Third Circuit left undisturbed language in the underlying district court opinion that:

> [t]he issue is not one of federal jurisdiction. Requiring parties to seek review by a state commission of a dispute arising out of an approved interconnection agreement does not exclude federal jurisdiction. It only imposes an intermediate step before getting to the federal court, not unlike an exhaustion requirement.

*Id.* at 5 (quoting *Core Commc'ns v. Verizon Pa.*, 423 F. Supp. 2d 493, 500 (E.D. Pa. 2006)).

Global urges this Court to resist following *SNET* on the grounds that the *SNET* court was applying Second Circuit law, which differs from controlling Sixth Circuit law. True, the *SNET* court's decision was predicated in part on Second Circuit precedent holding that an exhaustion requirement is jurisdictional only if it is "essential to the existence of the claim, or to ripeness, and therefore to the presence of an Article III case or controversy." *Id.* at 3 (quoting *Richardson*, 347 F.3d at 434). Although no similar analysis appears to exist in Sixth Circuit case law, Global is wrong when it claims that the Sixth Circuit treats all exhaustion requirements as automatically jurisdictional. Global cites only a single generalized sentence from *Bangura*, 434 F.3d at 493, to support this proposition ("Where a statute requires a plaintiff to exhaust his or her administrative remedies before seeking judicial review, federal courts do not have subject matter jurisdiction to review the plaintiff's claim until the plaintiff has exhausted his or her administrative remedies."); ignores the fact that the *Bangura* court did not actually treat the exhaustion provision there as jurisdictional and in fact declined to require exhaustion at all; and further ignores Sixth Circuit case law holding that particular administrative-exhaustion requirements are not jurisdictional.

13

*See e.g. McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) (stating that Title VII administrative-exhaustion requirements are not jurisdictional prerequisites and therefore are "subject to waiver, estoppel, and equitable tolling").

Having concluded that the Act's exhaustion requirement is best treated as an affirmative defense, not a jurisdictional bar, the Court must now determine whether Global has forfeited the defense. Ohio Bell argues that by failing to plead exhaustion in its answer and by waiting a year from the initiation of this action to raise it, Global is not entitled to the benefit of the defense.

This Court disagrees. As a threshold consideration, Global has relied on the not-insubstantial body of authority characterizing the Act's exhaustion requirement as jurisdictional, and therefore likely did not believe that the requirement was an affirmative defense it was obligated to plead. The uncertainty in this area of the law excuses Global's omission in its answer. *See e.g. Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004) (stating that "failure to plead exhaustion in the answer is especially excusable here given that the law on the topic is not clearly settled"). Further, Global asserted exhaustion in its motion to dismiss, which it brought a year after these proceedings commenced and just six months after Ohio Bell filed its amended complaint. *See Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) (stating that the defendants sufficiently preserved their exhaustion defense by "making the argument in their motion to dismiss"). Unlike in *SNET*, where the court found that Global waited three years to assert the defense, Global has not "foregone extensive opportunities to litigate it" in this Court. *SNET*, slip op., at 7.

Accordingly, the Court holds that the exhaustion requirement of § 252(e)(6) is an affirmative defense that Global has properly invoked. Ohio Bell's breach-of-ICA claims are therefore dismissed.[3]

Finally, a word about the procedural basis for the Court's order. Global has styled its motion as one for dismissal under Rule 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction. Because the Court concludes that the exhaustion requirement is not jurisdictional, it is precluded from dismissing the breach-of-ICA claims pursuant to the Rule provisions under which Global has moved. Nonetheless, the Court will treat Global's motion as a Rule 12(c) motion for judgment on the pleadings and grant it on that basis. In *Premiere*, the Fifth Circuit suggested that the district court should have treated the defendant's motion as a Rule 12(b)(6) motion for failure to state a claim. 440 F.3d at 687 n.5. Ordinarily, though, this is disfavored because a plaintiff is not required to plead facts negating an affirmative defense. *See Mosely*, 434 F.3d at 533. "That means that the earliest possible time to consider [Global's affirmative defense] would normally be after the answer has been filed, if it is possible to decide the issue through a Rule 12(c) motion for judgment on the pleadings." *Id.* Global has answered the amended complaint so a Rule 12(c) motion is not premature. Moreover, because the issue is ripe for resolution now and because Ohio Bell does not dispute that it has not, in fact, sought relief

---

[3]The Court rejects Ohio Bell's contention that a provision in the ICA permits it to bypass PUCO. The provision that Ohio Bell relies on says that in the event of a dispute, either party may pursue "any remedy available to it pursuant to law, equity, or agency mechanism." Contrary to Ohio Bell's claim, this provision does not enable it to avoid the exhaustion requirement of § 252(e)(6). The provision says only that a party may pursue "any remedy available to it," including a judicial remedy. As discussed above, federal review of Ohio Bell's breach-of-ICA claims is still available, but Ohio Bell must first seek relief before PUCO.

before PUCO, the Court holds that the fairest and most expeditious route is to dispose of Global's motion as if it were a Rule 12(c) motion.

### B. Ohio Bell's Federal-Tariff Claims

There is no question that federal courts are vested with jurisdiction to adjudicate federal-tariff claims. *See MCI Telecomms. Corp. v. Graham*, 7 F.3d 477 (6th Cir. 1993). Global does not dispute this principle, but contends that resolution of each of Ohio Bell's federal-tariff claims depends upon an interpretation of the ICA, and that therefore these claims must first be presented to PUCO. Global is wrong. With respect to all three of its federal-tariff claims, Ohio Bell has pleaded that it has provided and billed Global for services it has rendered pursuant to its federal tariff, but that Global has refused to pay.

Under the well-pleaded complaint rule, so long as a basis for federal jurisdiction appears on the face of the plaintiff's complaint, the complaint is not jurisdictionally infirm. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 154 (1908). Here, the first three counts of the amended complaint expressly allege violations of Ohio Bell's federal tariffs: Count one alleges that Ohio Bell has billed Global for two "SS7 links at the tariffed rate, but [Global] ha[s] not paid any of the charges." Count two alleges that Ohio Bell has billed Global for "the transport and termination of interstate toll traffic" under Ohio Bell's federal tariff, but Global has refused to pay. Count three alleges that Global has "violated [Ohio Bell's] federal tariff by failing to pay the tariffed rates for the local number portability queries performed by [Ohio Bell] on [Global's] behalf." These factual allegations are sufficient to invoke the Court's subject matter jurisdiction to hear Ohio Bell's federal-tariff claims. The fact that Global may defend against these claims by relying on the ICA does not eliminate this Court's jurisdiction. *See Peters v. Lincoln Elec.*

16

*Co.*, 285 F.3d 456, 468 (6th Cir. 2002) ("To determine whether a claim arises under federal law, a court, under the "well-pleaded complaint" rule, generally looks only to the plaintiff's complaint.").

Accordingly, the Court **DENIES** Global's motion as to Ohio Bell's federal-tariff claims.

## V.  CONCLUSION

For the reasons set forth above, the Court construes Global's motion as a Rule 12(c) motion for judgment on the pleadings and **GRANTS** it as to Ohio Bell's breach-of-ICA claims, but **DENIES** it in all other respects.  The Court further **DENIES** Ohio Bell's motion to strike.

**IT IS SO ORDERED.**

    s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATE: March 31, 2008**